```
            IN THE UNITED STATES DISTRICT COURT
           FOR THE WESTERN DISTRICT OF TENNESSEE
                      WESTERN DIVISION
```

| | |
|---|---|
| **ADRIAN PAUL McCLAREN,** )<br>)<br>)<br>    Plaintiff,    )<br>)<br>**v.**    )<br>)<br>**KEYSTONE MEMPHIS, LLC d/b/a** )<br>**COMPASS INTERVENTION CENTER,** )<br>)<br>)<br>    Defendant.    ) | Case No. 08-2806 |

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

Before the Court is Defendant Keystone Memphis, LLC's ("Keystone") May 20, 2009, Motion to Dismiss Plaintiff Adrian Paul McClaren's First Amended Complaint alleging that Keystone, acting through Compass Intervention Center ("Compass"), fired McClaren in violation of the clear public policy of the State of Tennessee. McClaren has filed a memorandum opposing Keystone's Motion. Taking all facts alleged by McClaren as true, the Court finds that McClaren's First Amended Complaint does not state a cause of action under Tennessee law and, therefore, GRANTS Defendant's Motion to Dismiss.

   **I.   Factual Background**

McClaren, a resident of Olive Branch, Mississippi, worked as a marriage and family therapist at Compass' Memphis,

Tennessee, center from April 8, 2002, until the events giving rise to the present suit. (Compl. ¶ 8.)[1] During that time, McClaren's personal vehicle displayed two license plates that depicted the Confederate Battle Flag. On the front of the vehicle was a novelty tag displaying solely the Confederate Battle Flag. (Id. ¶ 9.) McClaren displayed a state-issued Mississippi license plate on the rear of his vehicle. Rather than the standard-issue Mississippi plate, McClaren chose to display the specialty plate honoring the Sons of Confederate Veterans ("SCV").[2] (Id.; see also id. Ex. A, available at http://www.mstc.state.ms.us/mvl/tag_img/SonsofConfederateVet.jpg (last visited Dec. 16, 2009).) The SCV plate depicts a small Confederate Battle Flag as part of the SCV's emblem. It also displays the state flag of Mississippi, which incorporates the Confederate Battle Flag in its upper-left corner. (Compl. Ex. A.)

McClaren did not receive any negative response to his two license plates until Dr. Mark Monroe, Compass' clinical director, asked McClaren to remove the front license plate from

---

[1] All citations are to the First Amended Complaint. (See Dkt. No. 13.) McClaren does not plead that Compass employed him for a specific contractual time period, and Compass admits that McClaren was an at-will employee. (Id.; Defendant's Memorandum in Support of Its Motion to Dismiss at 6-9.) ("Def's. Memo")
[2] The SCV specialty plate is one of many such plates issued by the State of Mississippi and available to its drivers for an additional fee. Other such plates are devoted to wildlife conservation, military service, the State's universities and colleges, and boxing. See Tag List, http://www.mstc.state.ms.us/mvl/taglist.html (last visited Dec. 16, 2009).

2

his vehicle in the spring of 2006. (Id. ¶ 11.) McClaren "politely declined." (Id.) No further negative comments about McClaren's license plates were made until Nashon McPherson became chief executive officer of Compass. On September 28, 2007, McPherson asked Plaintiff to park his vehicle so that the front novelty plate, bearing the Confederate Battle Flag, would not be visible. (Id. ¶ 14.) Plaintiff again refused; and on October 1, 2007, McPherson sent Plaintiff a written warning for refusing to conceal his front license plate. (Id. ¶ 16 & Ex. D.) The notice informed Plaintiff that failure to follow the directive could result in further punishment, including termination. (Id.)

The next day, October 2, 2007, Plaintiff parked his vehicle "head in" so that the front plate would no longer be visible to anyone walking through the parking lot. (Id. ¶ 18.) Plaintiff informed McPherson of his willingness to cooperate, and McPherson visited Plaintiff's car in the parking lot to confirm that Plaintiff had complied with McPherson's request. McPherson discovered, however, that Plaintiff's state-issued rear license plate also contained the Confederate Battle Flag. McPherson once again issued a written warning to Plaintiff. (Id. ¶¶ 19-21.) Although from October 2 to October 8, 2007, Plaintiff continued to park his car so that the front license plate was not visible, McPherson continued to issue written reprimands.

3

(Id. ¶ 22.)  When Plaintiff asked McPherson why he continued to receive disciplinary notices after changing the way he parked, McPherson suggested that Plaintiff "do something" about his rear, state-issued license plate.  (Id. ¶ 25.)

Plaintiff had his final meeting with McPherson on October 8, 2007.  McPherson asked Plaintiff if he "had changed his mind regarding the plates."  (Id. ¶ 31.)  Plaintiff responded that he would continue to park his car so that the front plate would be hidden, but Plaintiff declined to remove or replace his rear SCV specialty license plate.  (Id.)  McPherson consequently terminated Plaintiff.  (Id. ¶ 33.)  Plaintiff unsuccessfully attempted to appeal his termination through Compass' internal review process.  (Id. Ex. J.)  The State of Tennessee, however, granted Plaintiff's application for unemployment benefits after finding that "[t]he employer has not provided sufficient evidence to prove that [McClaren's] actions constitute work-related misconduct."  (Id. Ex. I.)

## II.  Jurisdiction and Choice of Law

Plaintiff, a Mississippi resident, filed suit to contest his termination on October 7, 2008, in the Circuit Court for Shelby County, Tennessee.  McClaren asserts that Compass terminated him in violation of the clear public policy of Tennessee requiring all automobiles to have and display a state-issued license plate.  See Tenn. Code Ann. § 55-4-110(a).

4

Defendant, a Tennessee-based corporation, removed this action to federal court on November 11, 2008, based on this Court's diversity jurisdiction. See 28 U.S.C. § 1332(a)(1). Plaintiff filed his First Amended Complaint on April 20, 2009, seeking damages in excess of $75,000, after which Defendant filed the present Motion to Dismiss. (Amended Compl. at 9.)

In diversity actions, the substantive law of the state in which the federal court sits governs, including the forum state's choice of law provisions. Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938); Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); Cole v. Mileti, 133 F.3d 433, 437 (6th Cir. 1998). Plaintiff's wrongful termination claim sounds in tort. See Weber v. Moses, 938 S.W.2d 387, 393 (Tenn. 1996). Tennessee has adopted the Restatement's approach to resolve conflict-of-law issues arising in tort. See Hataway v. McKinley, 830 S.W.2d 53, 59 (Tenn. 1992) (adopting the Restatement (Second) of Conflicts of Laws as the governing standard). Under this approach, the law of the state with the most significant relationship to the injury will govern. Id. The parties here properly assume that Tennessee law governs this action, which is a claim by an employee against the Tennessee place-of-business where he worked. See id. (noting that the place where the injury occurred, the place where the

5

relationship of the parties is centered, and the business's location are all factors in the choice-of-law analysis).

### III. Standard of Review

In addressing a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court must construe the complaint in the light most favorable to the plaintiff and accept all well-pled factual allegations as true. League of United Latin Am. Citizens v. Bredesen, 500 F.3d 523, 527 (6th Cir. 2007). A plaintiff can support a claim "by showing any set of facts consistent with the allegations in the complaint." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 563 (2007). This standard requires more than bare assertions of legal conclusions. Bovee v. Coopers & Lybrand C.P.A., 272 F.3d 356, 361 (6th Cir. 2001). "[A] formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Any claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Erickson v. Pardus, 551 U.S. 89, 93 (2007). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Id. (citing Twombly, 550 U.S. at 555.) Nonetheless, a complaint must contain sufficient facts "to state a claim to relief that is plausible on its face" to survive a motion to dismiss. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949

(2009). "This plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556). To survive a motion to dismiss, a complaint ultimately must demonstrate "facial plausibility," defined as "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citation omitted).

**IV. Analysis**

In its Motion to Dismiss, Compass asserts that McClaren's First Amended Complaint fails to state a common law cause of action for termination in violation of public policy. Specifically, Compass argues that there is no Tennessee public policy mandating that McClaren display a specialty plate such as the SCV plate. (Def's. Memo at 7-8.) Compass further asserts that its actions did not require McClaren to violate a fundamental public policy of Tennessee, which it argues is necessary to succeed under a common law wrongful termination action. (Id. at 8-9.) Compass also alleges that McClaren failed to file suit before the expiration of the one-year statute of limitations. (Id. at 10-11.) Plaintiff responds that, because Compass terminated him for displaying a state-issued plate, it violated the well-established Tennessee public policy requiring all vehicles to display license plates.

7

(Plaintiff's Response in Opposition to Defendant's Motion to Dismiss at 5-8.) ("Pl.'s Resp.")  Plaintiff further asserts that he has complied with the applicable statute of limitations. (Pl.'s Resp. at 9-10.)

### A. Plaintiff's Suit is Not Barred by the Statute of Limitations

Compass first argues that McClaren failed to file suit within the one-year statute of limitations applicable to common law actions for wrongful termination in violation of public policy.  See Tenn. Code Ann. § 28-3-104(a) (establishing a one-year limitations period for personal tort actions); Weber, 938 S.W.2d at 39 ("A claim for retaliatory discharge is a tort action which is governed by the general tort statute of limitations which requires that a lawsuit be 'commenced within one (1) year after the cause of action accrued . . . .'" (quoting Tenn. Code Ann. § 28-3-104)).  In determining when the statute of limitations begins to run in wrongful termination cases, Tennessee follows the discovery rule, which states that a claim becomes ripe "when the employer provides unequivocal notice of the adverse employment action - in this case, termination."  Fahrner v. SW Mfg., Inc., 48 S.W.3d 141, 144 (Tenn. 2001).  The easiest application of the discovery rule is when an employer gives a formal termination notice to its

employee. The statute of limitations begins to run on the date the employee receives notice of his dismissal. Id.

The parties agree that Compass terminated McClaren on October 8, 2007. (See Compl. ¶ 33; Def.'s Memo at 10.) McClaren filed suit on October 7, 2008, seemingly within the one-year limitations period. (See Compl. at 1.) However, Compass argues that, because disciplinary warnings were given before October 7, 2008, this Court cannot consider them as evidence because they fall more than one-year before McClaren filed suit.

Compass' argument fundamentally misunderstands the function of a statute of limitation. The purpose of a limitations period is to provide a date certain by which an aggrieved party must bring suit after the events giving rise to the cause of action have occurred. Fahrner, 48 S.W.3d at 144. By definition, a plaintiff cannot file a wrongful termination suit until his employer has dismissed him. See id. (noting that the limitations period does not begin to run until the plaintiff receives "unequivocal notice" of his termination). The one-year statute of limitations governing wrongful termination actions does not limit the relevant facts about the termination that a court may consider as long as the plaintiff has filed suit within one year of termination. See, e.g., Vancleave v. Reelfoot Bank, No. W2008-01559-COA-R3-CV, 2009 Tenn. App. LEXIS

9

724, at *4-6 (Tenn. Ct. App. Oct. 30, 2009) (noting that the bank terminated the employee on November 6, 2002, but nonetheless considering the actions from November 1 – 6, 2002, that led to her termination). In other words, a statute of limitations serves to limit when a party may file suit, not as a rule of evidence limiting the facts a court may consider. Compass' argument, if accepted, would require McClaren to have filed suit for wrongful termination before his claim was ripe, i.e., before Compass had fired him. Because the statute of limitations does not require such an absurd result, the Court finds that, by filing suit on October 7, 2008, McClaren met the statute's one-year filing deadline. This Court may consider all relevant evidence presented in the Complaint surrounding his termination. See Tenn. Code Ann. § 28-3-104(a).

### B. Plaintiff Cannot Prove That His Termination Violated an Important Tennessee Public Policy

Defendant next argues that McClaren cannot succeed on his claim because he has failed to demonstrate that Defendant terminated him for refusing to violate a state statute, much less one that represents an important element of Tennessee public policy. (Def.'s Memo at 7-9.) Plaintiff responds that Tennessee law clearly requires every car to have a valid license plate affixed to its rear, so that Defendant's request that he "do something" about his rear tag was a request that he violate

10

the law.  (Pl.'s Resp. at 6.)  Plaintiff further asserts that the unambiguous statutory requirement to place a license plate on one's car is sufficiently clear to support a wrongful termination action.  (Id. at 7-8.)

Employment at will "is a bedrock of Tennessee common law." Franklin v. Swift Transp. Co., 210 S.W.3d 521, 527 (Tenn. Ct. App. 2006).  Under this common law doctrine, absent a contractual provision to the contrary, courts presume that employment contracts are for an indefinite term and terminable at will by either party for "good cause, bad cause, or no cause at all."  Id.; see also Guy v. Mut. of Omaha Ins. Co., 79 S.W.3d 528, 534-35 (Tenn. 2002).  However, the employment-at-will doctrine is subject to a small exception that allows a cause of action to lie against an employer who, in terminating an employee, violates a clear public policy of the State of Tennessee.  See Chism v. Mid-South Milling Co., 762 S.W.2d 552, 556 (Tenn. 1988) (establishing the common law cause-of-action for retaliatory discharge in violation of public policy).  To succeed on a claim for "this very exceptional tort action," id., a plaintiff must demonstrate the presence of three necessary elements:  an employment-at-will relationship; the violation of "a clear declaration of public policy [that] imposes duties upon the employee or employer"; and the termination of the employee for refusing to violate the applicable duties.  Reynolds v.

Ozark Motor Lines, Inc., 887 S.W.2d 822, 825 (Tenn. 1994).³ Later decisions have added that a "substantial factor" in the employer's decision to discharge the employee must have been "his exercise of protected rights or his compliance with clear public policy." Franklin, 210 S.W.3d at 528.

For purposes of its Motion to Dismiss, Compass concedes that McClaren has presented evidence that would suggest he can meet three of the four elements of the common law retaliatory discharge action. Compass focuses its argument on the contention that it asked McClaren to violate "a clear direction of public policy" when it told him to "do something" about his rear SCV specialty license plate. (Def.'s Memo at 6-9); see also Reynolds, 887 S.W.2d at 825. Compass argues that the statutory requirement McClaren cites – that every car have a license plate – cannot support an action for common law wrongful termination. (Def.'s Memo at 8-9.)

Not every violation of the law is sufficiently consequential to support an action for wrongful termination. See Franklin, 210 S.W.3d at 531 ("[I]t was not enough . . . to simply show that the employer violated a law or regulation.")

---

³ Following the Tennessee Supreme Court's recognition of a common law retaliatory discharge action, the Tennessee General Assembly created a statutory cause of action for wrongful discharge under the Tennessee Public Protection Act. See Tenn. Code Ann. § 50-1-304. This statutory cause of action is cumulative to the common law action and requires a plaintiff to prove slightly different elements to succeed. See Guy, 79 S.W. 3d at 535, 537. McClaren has asserted a claim solely under the common law. (See Compl. ¶¶ 52-54; Pl.'s Resp. at 5.)

Instead, a plaintiff must demonstrate that his actions have furthered "some 'important public policy interest embodied in the law.'" Id. (quoting Guy, 79 S.W.3d at 538). The public policy implicated must be "fundamental." Vancleave, 2009 Tenn. App. LEXIS 724, at *11. To determine what constitutes a fundamental element of Tennessee public policy, courts consider "the constitution and the laws, and the course of administration and decision." Stein v. Davidson Hotel Co., 945 S.W.2d 714, 717 (Tenn. 1997) (internal quotation marks and citations omitted). The Plaintiff is the master of his Complaint and, therefore, bears the responsibility of pointing the Court to statutory provisions or administrative regulations evincing the public policy position he claims for his protection. Vancleave, 2009 Tenn. App. LEXIS 724, at *12.

McClaren has identified one Tennessee statutory provision that he claims Compass violated when CEO McPherson ordered him to "do something" about his state-issued rear license plate. Tennessee Code Annotated Section 55-4-110 requires the display of vehicle registration plates on each motor vehicle in Tennessee and states, in pertinent part:

> (a) The registration plate issued for passenger motor vehicles shall be attached on the rear of the vehicle.
> . . .
>
> (b) Every registration plate shall at all times be securely fastened in a horizontal position to the vehicle for which it is issued so to prevent the plate

13

>from swinging and at a height of not less than twelve inches (12") from the ground, measuring from the bottom of the plate, in a place and position to be clearly visible and shall be maintained free from foreign materials and in a condition to be clearly legible. . . .
>
>(c)(1) A violation of this section is a Class C misdemeanor. All proceeds from the fines imposed by this subsection (c) shall be deposited in the state general fund.
>
>   (2) A person charged with a violation of this section may, in lieu of appearance in court, submit a fine of ten dollars ($10.00) for a first violation, and twenty dollars ($20.00) on second and subsequent violations to the clerk of the court that has jurisdiction of the offense within the county in which the offense charged is alleged to have been committed.

Tenn. Code Ann. § 55-4-110(a)-(c). Thus, a person who violates this statutory provision is guilty of a Class C misdemeanor, the least serious criminal-violation category under Tennessee law. See Tenn. Code. Ann. § 40-35-111(e) (listing the degrees of misdemeanors from A to C).

Violation of such a minor provision is not the serious breach necessary to support a common law wrongful termination action in Tennessee. Because employment-at-will is such a well-ingrained principle of Tennessee law, Tennessee courts have been unwilling to recognize exceptions to this general rule except in cases where the interests at stake are both high and related to public safety and security. See, e.g., Guy, 79 S.W.3d at 537-38 (granting relief where plaintiff refused to violate regulations designed to prevent insurance fraud); Crews v. Buckman Labs.

14

Int'l, Inc., 78 S.W.3d 852, 865 (Tenn. 2002) (plaintiff discharged for reporting in-house counsel's unauthorized practice of law); Mason v. Seaton, 942 S.W.2d 470, 472 (Tenn. 1997) (plaintiff reported violations of fire code and dangerous working conditions); Reynolds, 887 S.W.2d at 824-25 (driver insisted upon inspecting his eighteen-wheeler as required by law to ensure it was safe for operation); Vancleave, 2009 Tenn. App. LEXIS, at *12-17 (bank employee refused to open account under name of straw account holder, which would violate post-9/11 reporting requirements); cf. Stein, 945 S.W.2d at 718-19 (refusing to find a clear public policy preventing a private employer from requiring random drug testing); Franklin, 210 S.W.3d at 532-33 (declining to find that an employer's discharging an employee for refusing to drive a truck with a copy of a cab card when the applicable regulation required an original infringed an important public policy interest).

The statement McClaren cites is ambiguous, as one could infer that to "do something" about his license plate meant merely to select a different plate from among the many options Mississippi offers its residents. However, even if one accepts the statement as McClaren interprets it – that Compass wanted him to drive his car without a license plate – no fundamental public policy interest would be implicated. The absence of a license plate is an annoyance, comparable to the absence of an

15

original cab card in a commercial vehicle. Cf. Franklin, 210 S.W.3d at 532. A license plate is a de minimis contribution to the safety and welfare of the public and is not of comparable importance to avoiding dangerous working conditions or ensuring vehicle safety. Cf. Mason, 942 S.W.2d at 472; Reynolds, 887 S.W.3d at 824-25.

The Tennessee Court of Appeals has cited with approval the decision of the United States Court of Appeals for the Ninth Circuit in Desoto v. Yellow Freight Sys., Inc., 957 F.2d 655 (9th Cir. 1992), which interpreted a similar provision of California law. See Franklin, 210 S.W.3d at 532-33 (citing Desoto). In Desoto, the plaintiff believed his employer had asked him to operate his delivery trailer with expired registration papers and an invalid "vehicle tag," i.e., a license plate. 957 F.2d at 656. Desoto refused to deliver goods using the trailer, and Yellow Freight fired him. Id. The Ninth Circuit affirmed the dismissal of DeSoto's suit, finding that operating with expired papers and an invalid tag "does not implicate fundamental public policy concerns, such as health, safety, or crime prevention for which wrongful termination actions" will lie. Id. at 659. Instead, the implicated California statute was merely "one of the 'many statutes [that] impose requirements whose fulfillment does not implicate fundamental public policy concerns.'" Id. (quoting Foley v.

16

Interactive Data Corp., 765 P.2d 373, 379 (Cal. 1988)) (alteration in original). The same analysis applies here to a claim that Compass asked McClaren to remove his license plate. See Franklin, 210 S.W.2d at 532-33. Thus, because McClaren cannot satisfy the requirement that his claim rests upon an important provision of Tennessee public policy, that claim cannot succeed. See id. at 531.[4]

### V. Conclusion

Plaintiff's complaint fails to state a cause of action for which this Court may grant relief under Tennessee law. See Fed. R. Civ. P. 12(b)(6). The Court, therefore, GRANTS Defendant's Motion to Dismiss.

So ordered this 5th day of January, 2010.

> s/ Samuel H. Mays, Jr.
> SAMUEL H. MAYS, JR.
> UNITED STATES DISTRICT JUDGE

---

[4] The result is unaffected by the specific cause the specialty license plate advances, be it the Sons of Confederate Veterans or a university football program. Tennessee law leaves "a great deal of discretion in employing or discharging employees" to corporate officials. Chism, 762 S.W.2d at 556. This case, as pled, does not implicate free speech or free expression.